24 N. E. 2d 597; **Baltimore & O. Ry. Co. v. McClellan, Adm'x,** 69 Oh St 142, 157, 159, 68 N. E. 816; **Pennsylvania Co. v. Morel,** 40 Oh St 338.

The failure of the defendant to maintain a watchman at the crossing after 1:00 a. m. has no material bearing on the issue of contributory negligence. The plaintiff stopped at the crossing and waited even though no watchman was there. He testified that he always stopped for a crossing for his own safety regardless of whether it had a watchman. His position in this case is not that the absence of a watchman induced him to cross without looking, but that he stopped and looked and didn't see the train.

Defendant's motion will be sustained and judgment entered for defendant.

**MARTIN, d. b. a. M. & M. AUTO SALES, Plaintiff-Appellant, v. COFFMAN, d. b. a. JIM'S MOTOR SALES, Defendant-Appellee.**

Ohio Appeals, Second District, Montgomery County.

No. 2067. Decided December 2, 1949.

A. W. Schulman, Dayton, for plaintiff-appellant.
Jacobson & Durst, Dayton, for defendant-appellee.

**OPINION**

By MILLER, PJ:

This is a law appeal from the Municipal Court of Dayton, Ohio. The action was one for damages arising out of the purchase of a 1938 Buick Sedan by the plaintiff-appellant from the defendant-appellee. The parties will hereafter be referred to as plaintiff and defendant.

The record discloses that on the 8th day of September, 1948, the defendant sold a Buick automobile to the plaintiff for the sum of $340.00. The plaintiff was a used car dealer who made the purchase with the intention of making a resale. After making repairs to the extent of approximately $100.00 the car was sold by the plaintiff for the sum of $780.00 to one Jack Cales, part of which was paid in cash and the balance was financed through the General Finance Corporation. Soon after the purchase Cales became unemployed and as a result no payments were made on the note given for the balance of the purchase price. The car was repossessed by the Finance Company, which in turn called upon the plaintiff to pay the amount of the note as it had been endorsed by him with recourse. This was done. The car was redelivered to the plaintiff and a certificate of title was reissued to him. It was then discovered that both the engine number and serial number in the certificate of title differed from those on the automobile. Upon examination it was found that the certificate of title transferred by the defendant to the plaintiff was different in the same respects. The difference in the engine numbers was several million, but there was a similarity in the serial number, the only difference being an omission of the digit "1" from all the certificates of title. After negotiating for some time with the defendant, endeavoring to get a bill of sale covering title to the automobile conveyed, and the defendant either refusing or not being able to deliver such a certificate of title, the plaintiff tendered the car back to the defendant and demanded a refund of the purchase price plus the amount of the repairs placed upon it. This being refused, action was brought seeking damages in the amount of $644.72, which was the balance of the purchase price from Jack Cales and which the plaintiff had to repay to the Finance Company. The trial court found that there was nothing due the plaintiff and the appeal is from this judgment.

The plaintiff relies upon the theory of a breach of an implied warranty, citing §8393 GC, which provides that in a contract to sell or sale, unless the contrary intention appears, there is an implied warranty on the part of the seller

that he has a right to sell the goods. Does the record show that the defendant had a right to sell the Buick automobile which is the subject of this action? He did only upon the condition that he was the owner. Under §6290-4 GC there is only one way to prove ownership of an automobile and that is by producing a certificate of title. **Mielke v. Leeberson, 150 Oh St 528.** The certificate of title tendered by this defendant was therefore no evidence of ownership to the car being sold. Sec. 6290-13 GC requires that the certificate of title show the serial number and motor number of the car. Counsel for the defendant urges that since there has been no one to assert a claim of title superior to that of the plaintiff, that he has no right to maintain the action; that such a claim constitutes a condition precedent to the right to sue. We do not consider such to be the law of this state. This question has been passed upon in the case of **Kwiatkowski v. Hoislbauer, 13 Oh Ap 202.** At page 204 the court says:

"Under §8393 GC, there is an implied warranty on the part of the seller that he has a right to sell the goods, and there is a further implied warranty that the buyer should have and enjoy quiet possession of the goods as against any lawful claims existing at the time of the sale. On principle, therefore, it appears that when defendant sold the goods, there was an immediate breach of the implied warranty of right to sell. If there was a breach of warranty by the seller, the Sales Act, §8449 GC, authorizes the buyer at his election to rescind the sale, offer to return the goods to the seller and recover any part of the price which has been paid. The seats had an approximate value of $900 and constituted a substantial part of the goods sold.

\*            \*            \*            \*

Must there be a claim or eviction before the buyer can get redress? As to sales of goods the authorities at common law are in some conflict as to this question. The effect of the provision of the Sales Act, §8449 GC, would seem to give the buyer of chattels the right to proceed immediately, though his possession had not been disturbed. (See Williston on Sales, Section 221.) By pursuing this course, the buyer assumes the burden of establishing the infirmity of the seller's title. Jordan v. Van Duzee, 139 Minn., 103, 107."

It will be noted that this case places the burden of establishing the infirmity of the seller's title upon the purchaser. The plaintiff fully met this burden when he proved that the defendant's only evidence of ownership was not applicable to the automobile in question.

Having found that there was a breach of warranty we must next determine the plaintiff's rights upon such a breach. These are definite under §8449 GC:

"**Breach of warranty.** (1) When there is a breach of warranty by the seller, the buyer may, at his election—

\* \* \* \*

(b) Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty.

\* \* \* \*

(6) The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events from the breach of warranty."

Since the petition does not ask that the contract be rescinded, although it does allege an offer to return the car which was refused, and the relief sought is only damages, it would appear that the plaintiff elects to keep the property and maintain his action for damages under paragraph (1) (b), supra. Even though the plaintiff had failed in his proof of a breach of an implied warranty, which fact we do not admit, still under §8447 GC the plaintiff's right of action would be maintainable as the right of ownership to the automobile never passed to the plaintiff. **Sec. 8447 GC** provides:

"(1) When the property in the goods has not passed to the buyer, and the seller wrongfully neglects or refuses to deliver the goods, the buyer may maintain an action against the seller for damages for non-delivery.

"(2) The measure of damages is the loss directly and naturally resulting, in the ordinary course of events, from the seller's breach of contract."

The defendant has cited §6290-10 GC, contending that under this section the plaintiff can obtain a proper certificate of title. We do not think the evidence supports this conclusion as there is no evidence in the record that the engine in the car had ever been replaced. That such was done is quite probable, but there are no facts in the record to support the conclusion. The section of the Code cited is applicable only when the engine of an automobile has been replaced.

We therefore hold that the trial court erred in rendering

a judgment for the defendant; the same is reversed and the cause is ordered remanded to the trial court for further proceedings according to law.

HORNBECK, J, concurs.
WISEMAN, J, concurs in judgment.